UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 19-23770-CIV-MORENO**

TECHNOLOJOY, LLC, and IBRAHIM F.
ALGAHIM,

                Plaintiffs,

vs.

BHPH CONSULTING SERVICES, LLC,
d/b/a BHPH CAPITAL SERVICES; SEAN
FOUZAILOFF, and ANATOLIY SLUTSKIY,

                Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT AND DENYING MOTION IN LIMINE WITHOUT PREJUDICE

This dispute stems from a business relationship where Plaintiff Technolojoy, LLC purchased used cellular phones from the Defendant BHPH Consulting Services, LLC. It is undisputed that BHPH sent nonconforming shipments of phones, for which Technolojoy prepaid. BHPH remedied the breaches by providing credits toward future orders. The credits got carried over and increased over time from invoice to invoice. Eventually, the business relationship ended and the Plaintiffs sought chargebacks from American Express to mitigate damages.

Plaintiffs, Technolojoy, LLC and its principal Ibrahim F. Algahim, are suing for breach of contract, quantum meruit, unjust enrichment, fraud, violation of the Florida Deceptive and Unfair Trade Practices Act, and open account. Defendants move for summary judgment, but the Court only grants the motion as to the equitable claims because the parties do not dispute the existence of a valid contract for the purchase and sale of goods. The Court finds there are disputed issues of material fact precluding summary judgment on the other claims.

Defendants filed a counterclaim for breach of contract, unjust enrichment, defamation, violation of the Florida Deceptive and Unfair Trade Practices Act, and common law indemnity. The Court finds that the equitable claim for unjust enrichment survives summary judgment as there is a disputed issue of material fact as to whether the chargebacks Plaintiffs obtained from American Express, the shipments of phones Plaintiffs received, and other refunds surpassed the amount Plaintiffs were owed.

THIS CAUSE came before the Court upon Defendants' Motion for Summary Judgment **(D.E. 113)**, Plaintiffs' Motion for Summary Judgment **(D.E. 138)** filed on **July 28, 2021**, and Defendants' Motion in Limine **(D.E. 148)** filed on **August 25, 2021**.

THE COURT has considered the motions, the responses, the pertinent portions of the record, and being otherwise fully advised in the premises, it is

ADJUDGED that Defendants' Motion for Summary Judgment is DENIED as to the Plaintiffs' claims for breach of contract (Count 1), the fraud claims (Counts 4-6), and the Florida Deceptive and Unfair Trade Practices Act claim (Count 7). The Court notes that Defendants did not move for summary judgment on Plaintiffs' claim for Open Account (Count 8). It is also

ADJUDGED that Defendants' motion for summary judgment is GRANTED as to the equitable claims for unjust enrichment and quantum meruit (Counts 2 and 3). It is also

ADJUDGED that Plaintiffs' Motion for Summary Judgment is DENIED as to the Counterclaim for unjust enrichment (Count 2). It is

ADJUDGED that Plaintiffs' Motion for Summary Judgment on the Counterclaim is GRANTED as to the breach of contract claim (Count 1), the defamation claim (Count 3), the Florida Deceptive and Unfair Trade Practices Act claim (Count 4), and the common law indemnity claim (Count 5).

ADJUDGED that Plaintiffs' Motion for Summary Judgment on their own breach of contract claim is DENIED. It is

ADJUDGED that Defendants' motion for summary judgment on their counterclaims for breach of contract, unjust enrichment, violation of the Florida Deceptive and Unfair Trade Practices Act and common law indemnity is DENIED. Finally, it is

ADJUDGED that Defendants' motion in limine is DENIED without prejudice with leave to reargue at trial.

## I.   **Factual Background**

Plaintiff, Technolojoy, LLC is a consumer electronic wholesale company.  Defendant BHPH Capital Services sells electronics, including cell phones, to wholesalers. From December 2018 to July 8, 2019, Technolojoy and BHPH were in a business relationship where Technolojoy would prepay BHPH for the purchase of cell phones and other electronics so that Technolojoy could resell them. Technolojoy's principal is Ibrahim Algahim and BHPH's principals are Sean Fouzailoff and Anatoliy Slutskiy.

There are three means of communication between the parties during this business relationship. BHPH would send invoices to Technolojoy. There are over a hundred invoices exchanged between the parties. The parties exchanged text messages to dispute the pricing and condition of the cellular phone shipments. The parties also created a Google sheet to document the issues.

### A.  *Nonconforming Shipments*

Technolojoy became aware that BHPH was not sending conforming shipments to it. Technolojoy's principal, Ibrahim F. Algahim, testified that he would advise BHPH about the nonconforming goods – shipments contained incorrect quantities or did not match the invoice's product descriptions. Algahim Affidavit at ¶6. Defendant's principal, Sean Fouzailoff, testified at

his deposition that BHPH invoiced Technolojoy for cell phones it did not yet have in its possession. Fouzailoff Depo. at 42. BHPH would acquire the phones it sold to Technolojoy from Smarter Phone, a company located in the United Kingdom. *Id.* at 29. Technolojoy would fully prepay the phones, and at times, would use these funds to purchase the phones it would then send to Technolojoy. *Id.* at 37,41.

The parties also created a Google Sheet to keep track of invoice numbers, models of cell phones, and any deductions from the sales prices due to the conditions of the phones. Fouzailoff Depo. at 77. Algahim also had access to the Google Sheet, and he could note nonconforming shipments and problems with cell phones. Fouzailoff's testimony confirms that BHPH shipped non-conforming goods to Technolojoy. Fouzailoff Depo. at 12, 33.

BHPH would correct the issue by sending a new invoice to reflect actual goods delivered and rather than refund the monies paid, BHPH would provide Technolojoy with a credit toward a future order. For example, the discount for Invoice #144 is reflected on the next Invoice #145. On Invoice #144, Algahim requested a discount of $2,500 because the phones were delivered without the original Apple iPhone boxes. As a result, BHPH applied this discount to Invoice #145 to reduce the total from $10,480 to $7,980. Fouzailoff Decl. at ¶17. This process repeated with complaints about nonconforming goods and discounts given on future orders. *Id.* This resulted in Technolojoy accumulating credits. Fouzailoff Depo. 54-60; Algahim Affidavit at ¶¶ 18, 20. Technolojoy claims it never received the credits because BHPH would carry them over from one invoice to the next. Algahim Affidavit at ¶ 18. Fouzailoff testified that the credits were interrelated from invoice #150 to invoice #260. Fouzailoff Depo. at 96-97.

BHPH contends that some credits were sent to third parties at Plaintiff's request. Algahim testified that he directed BHPH to send a credit to a third party called MacBookDaddy via

PayPal. Algahim Depo. Vol. 1 at 56-57. As to invoice #159, BHPH contends that Plaintiff received the phones, received the credit via PayPal, and also received a chargeback from the credit card company for $14,440. *Id.* at 134-136, 139. Algahim disputes that Technolojoy received a $14,440 windfall and that it "triple dipped" on invoice 159. Algahim Affidavit at ¶ 26.

Over the course of the business relationship, the parties exchanged text messages. In a text message dated July 6, 2019, Fouzailoff admitted that BHPH owed Technolojoy $118,000. Fouzailoff Depo. at Exh. A at 521. BHPH separately admits in its Counterclaim that it owed $105,995 to Technolojoy at the time it ended the business relationship. Counterclaim at ¶ 22 (D.E. 39). Defendants explained that the amount owed was for Invoice Nos. 235, 236, 241, and 249, which they did not deliver to Technolojoy. *Id.* Fouzailoff also testified that he did not deliver $25,500 in goods on invoice 228 and $22,620 on Invoice 229. Fouzailoff Depo. at 140-41; 166.

During the first week of July 2019, Technolojoy requested the balance of the cell phones that were prepaid by Technolojoy, but remained outstanding. Algahim Affidavit at 10. On July 6, 2019, Fouzailoff sent a text message to Algahim explaining that BHPH was not able to ship new inventory to Technolojoy or return Technolojoy's funds due to lack of revenue. Fouzailoff Depo. at 146-148, Exh. A at 517.

B. *The Chargeback Requests*

On July 6, 2019, BHPH instructed Technolojoy in a text message to seek a chargeback with American Express in the amount of $52,000. Fouzailoff Depo. at Exh. A at 520 (The text message reads: "When you do the chargeback for 52k make sure you tell Amex you did not get the product."); *Id.* at 187. American Express did not, however, grant this request for chargeback because BHPH objected to it. Algahim Affidavit at ¶ 23; Fouzailoff Depo. at 185-187. Defendants' Counterclaim also states that they instructed Technolojoy to seek chargebacks in the

amount of $105,995 for Invoice Nos. 235, 236, 241 and 249. Counterclaim at ¶ 22. Algahim states that Technolojoy did not receive full chargebacks due to BHPH's objections. Algahim Affidavit at ¶ 23. Exhibit E to Defendants' Motion for Summary Judgment, however, shows that BHPH consented to at least some of the chargeback requests. The May 22, 2020 letter from American Express to Algahim states: "Thank you again for contacting us about the charge(s) from Bhph Consulting Services in the amount of $119,270. We are pleased to inform you that Bhph Consulting Services has issued credit(s) to your account in the amount of $72,080. The credits will appear as "$27,180, $24,300 and $20,600." Exhibit E contains a second letter stating that Algahim requested review of charges totaling $101,910, and BHPH consented to crediting $29,160.

BHPH terminated the business relationship on July 8, 2019. Fouzailoff Depo. at 131; Algahim Affidavit at ¶ 15. Algahim testified that as of July 8, 2019, Technolojoy had prepaid approximately $1,292,046 to BHPH and received approximately $587,471 worth of cell phones, some of which were nonconforming. Algahim Affidavit at ¶ 28. To mitigate its damages, Algahim testified that Technolojoy instituted chargebacks on *all* invoices. Algahim Affidavit at ¶ 28; Algahim Depo. at 126. The reason Technolojoy requested chargebacks on *all* invoices, even though Technolojoy received some conforming shipments, was because Technolojoy prepaid BHPH for all invoices and the invoices and discounts were interrelated. *Id.* Algahim testified that Technolojoy succeeded in obtaining $260,000 in chargebacks. Algahim Depo. at 126. He calculates that Technolojoy is still owed $444,575 by BHPH. BHPH disputes this figure and claims that after receiving phones and chargeback requests that Technolojoy was unjustly enriched by $266,192.

As a result of the many chargeback requests, BHPH was sued by Electronic Merchant

Systems, the processor. BHPH settled that case, *Francis David Corp. d/b/a Electronic Merchant*

*Systems v. BHPH Consulting Services d/b/a BHPH Phones Services, et al.*, Case No. 19-920921

in the Cuyahoga County Court of Common Pleas. BHPH settled the case and was placed on a

"Match" list or terminated merchant list, such that no credit card processor would accept their

business. BHPH was blocked from accepting credit card orders for an unspecified time.

### C.  *Messages Relevant to Defendants' Defamation Counterclaim*

As a result of the termination of this business relationship, Algahim sent a message on the

Better Business Bureau's messaging board, which is private and cannot be publicly accessed.

Fouzailoff Depo. at 206, Exh. W (D.E. 138-10). Algahim's message was sent to the automated

email system, donotreply@bluebbb.org, then forwarded to Slutskiy, who then forwarded it to

Fouzailoff. Slutskiy Depo. at 92-93, Exh. W. In the August 9, 2019 message, Algahim made the

following statements: "These documents are fake. The refunds were never given. Aside from

these fake refunds, there are multiple more invoices that were not sent or credited. I was

defrauded by both Anatoliy Slutskiy and Sean Fouzailoff." The message further enumerated

several potential crimes: fraud, credit card frauds, extortion, forgery, honest service fraud, money

laundering, ponzi scheme, racketeering and wire fraud. Exh. W.

Slutskiy testified that he did not know the identity of any person that had access to the

Better Business Bureau message that Algahim sent. Slutskiy Depo. at 94. Although the content

board is publicly available, Slutskiy did not know who could access the message or whether

anyone accessed the message on any given date. He added that he did not see anyone comment

on the message that Algahim posted on the Better Business Bureau board. Slutskiy Depo. at 95.

Exhibit W also contains an email from Technolojoy to Slutskiy. Exh. W at 4; Fouzailoff

Depo. at 210-211. In the email, Algahim states that Slutskiy and Fouzailoff defrauded his

company and that he reported the matter to law enforcement. Fouzailoff acknowledged that no one was copied on the email and he was the recipient. He indicated someone could be blindly copied, but that did not happen to his knowledge. Slutskiy Depo. at 96.

The last message relating to the defamation claim is a social media post by someone named David. Exh. W at 5; Slutskiy Depo. at 211. Neither Algahim's name nor Technolojoy appear on the social media post. *Id.*

Finally, there is a screenshot of a text exchange that was posted on Facebook by a David Becerra. *Id.* at 6-7. Becerra's post shows that Algahim texted saying: "Although I prefer not to text, I believe you were scammed by BHPH/Sean/Tony." Slutskiy Depo. at 216.

## I.      **Legal Standard**

Federal Rule of Civil Procedure 56 provides, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to judgment as a matter of law.'" *See Alabama v. N. Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). The existence of some factual disputes between litigants will not defeat an otherwise properly ground motion for summary judgment; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis added). Mere "metaphysical doubt as to the material facts" will not suffice. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251 (1986). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving

party. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992).

## II.    Legal Analysis

The parties filed cross-motions for summary judgment. Defendants move for summary judgment on Plaintiff's Complaint: Count 1 for breach of oral contract, Count 2 for quantum meruit, Count 3 for unjust enrichment, Count 4 for fraudulent misrepresentation, Count 5 for fraudulent inducement, Count 6 for fraud, and Count 7 for violation of Florida's Deceptive and Unfair Trade Practices Act. Defendants do not move for summary judgment on Count 8 for open account. Plaintiffs separately move for summary judgment on their own breach of contract claim, Count 1 of the Amended Complaint, requesting the Court find liability and damages.

Plaintiffs move for summary judgment as to the Defendants' Counterclaim: Count 1 for breach of contract, Count 2 for unjust enrichment, Count 3 for defamation, Count 4 for violation of the Florida Deceptive and Unfair Trade Practices Act, and Count 5 for common law indemnity.  Defendants separately move for summary judgment on their Counterclaim requesting the Court find Plaintiffs liable on Counts 1, 2, 4 and 5 – all but Count 3's defamation claim.

### A.   The Contract Claims

#### 1.   Count 1 of the Amended Complaint: Breach of Contract

To establish a breach of contract, there must be a (1) valid contract; (2) a material breach, and (3) damages. *Am. Aeronautical Corp., Inc. v. Aviation Engine Serv., Inc.*, Case No. 12-21276-CIV, 2013 WL 1499353 (S.D. Fla. April 10, 2013). It is undisputed that the parties had a contract for the purchase and sale of cellular phones. Plaintiffs assert Defendants materially breached the contract by failing to provide goods that conformed to the invoiced prices.

Plaintiffs assert they paid for phones not received and phones not meeting invoice specifications. Plaintiffs claim they are damaged as a result because they overpaid for phones by $444,575.

Defendants agree that at times the phone shipments did not meet the invoices' quantity or product specifications. Defendants, however, assert that Plaintiffs received refunds when that occurred and ultimately, obtained chargebacks from the credit card companies. Defendants' position is that Plaintiffs, rather than being damaged by the breaches, received refunds exceeding what they were owed totaling $266,192. Whether or not the refund amounts sufficiently compensated Plaintiffs for the breach is a disputed issue of material fact. Accordingly, the Court denies Defendants' motion for summary judgment as to Plaintiffs' breach of contract claim in Count 1. Because the Court finds there is an issue of fact as to damages, the Court also denies Plaintiff's motion for summary judgment as to its breach of contract claim in Count 1.

### 2. Counterclaim Count 1: Breach of Contract

Plaintiffs also moved for summary judgment on Count 1 of the Counterclaim for breach of contract. In Count 1 of the Counterclaim, BHPH argues that Technolojoy breached the contract "for the sale and purchase of the Apple iPhones and Apple Watches, memorialized by the invoices" by "not paying the full amount owing thereunder when it wrongfully initiated chargebacks against BHPH." BHPH alleges that it suffered damages of at least $264,000 as a direct and proximate result of Technolojoy's alleged breach. "In breach of contract actions, a plaintiff may recover only if the damages were a proximate result of the breach." *Cibran Enters. Inc. v. BP Products N. Am., Inc.*, 365 F. Supp. 2d 1241, 1254 (S.D. Fla. 2005) (citing *Chipman v. Chonin*, 597 So. 2d 363, 364 (Fla. 3d DCA 1992)).

First, the Court must determine whether Plaintiffs breached the contract. Plaintiffs' obligation under the contract is to pay for cell phones and other items purchased from BHPH. Fouzailoff testified that Technolojoy fully prepaid each invoice submitted by BHPH. Fouzailoff

Depo. at 41-42. In fact, BHPH acquired the cell phones it sold to Technolojoy with Technolojoy's funds. *Id.* at 37. Thus, Technolojoy did not materially breach the contract.

BHPH's claim that Technolojoy breached the contract by seeking chargebacks is belied by the record evidence that BHPH agreed that Technolojoy seek those chargebacks. Counterclaim at ¶ 22 (conceding in its pleadings that it agreed Technolojoy seek chargebacks in the amount of $105,995 for Invoice Nos. 235, 236, 241, and 249).

The record also shows that Technolojoy sought chargebacks on July 16, 2019, which is 8 days after BHPH terminated the business relationship. Algahim Affidavit at ¶ 28; Fouzailoff Depo. at 131 (testifying that relationship ended on July 8, 2019). At the time it sought the chargebacks, there was no contract in place between the parties, which Technolojoy and Algahim breached. Accordingly, the Court finds the record evidence does not show that Plaintiffs breached the contract by requesting chargebacks from American Express.

Because the record evidence does not show that Technolojoy breached the contract when it requested the chargebacks, the Defendants are unable to establish that the purported breach is the proximate cause of damages suffered by Defendants. The Court finds that Defendants are unable to establish a counterclaim for breach of contract where they cannot show Plaintiffs breached by requesting chargebacks they themselves authorized. Accordingly, the Court grants Plaintiffs' motion for summary judgment as to Count 1 of the Counterclaim and denies Defendants' motion for summary judgment on Count 1 of the Counterclaim.

### B. The Equitable Claims

#### 1. Amended Complaint Counts 2 and 3: Quantum Meruit and Unjust Enrichment

Defendants move for summary judgment by stating that the quantum meruit and unjust enrichment claims are duplicative of the breach of contract claim. Plaintiffs' claims for quantum

meruit and unjust enrichment are based on the evidence that Technolojoy prepaid BHPH for cell phones, but BHPH failed to deliver the cell phones or refund the funds received from Technolojoy.

The existence of an express contract generally extinguishes the equitable claims of unjust enrichment and quantum meruit.. "[A]n unjust enrichment claim can only be pled in the alternative if one or more parties contest the existence of an express contract." *Zarrella v. Pacific Life Ins. Co.*, 755 F. Supp. 2d 1218, 1227 (S.D. Fla. 2010) (citing *In re: Managed Care Litig.*, 185 F. Supp. 2d 1310, 1337 (S.D. Fla. 2002)). Plaintiffs rely on *Harden v. TRW, Inc.*, 959 F.2d 201, 204 (11th Cir. 1992) to argue that they should be able to submit express contract, quantum meruit, and unjust enrichment theories to the jury if there is sufficient evidence to support them. *Harden*, itself, recognizes that "where the evidence is overwhelming, a court may find the existence of an express contract, as a matter of law, and thereby preclude a quantum meruit recovery." *Id.* The record is undisputed that the parties had a valid, enforceable contract. The Plaintiffs allege the existence of an oral contract, and BHPH admitted to it as well. Because neither side contests the validity of the contract, summary judgment is due on Plaintiffs' equitable claims that stem from the same subject matter as Plaintiffs' contract claim. Where there is an adequate remedy at law, courts routinely disallow claims in equity. *White Const. Co. v. Martin Marietta Materials, Inc.*, 633 F. Supp. 2d 1302, 1332 (M.D. Fla. 2009) (stating it is well settled that Florida law will not imply a contract where an express contract exists concerning the same subject matter); *ThunderWave, Inc. v. Carnival Corp.*, 954 F. Supp. 1562, 1566 (S.D. Fla. 1997) (stating that conclusive proof of valid express contract precludes suit for recovery in quantum meruit and unjust enrichment since "the law will not imply a contract where a valid express contract exists.").

Attempting to survive summary judgment, Plaintiffs contend that BHPH relied on fraudulent invoices to dispute the terms of the contract between the parties. Algahim Affidavit at ¶ 23. Algahim testified that BHPH altered the invoices it filed with the Court. *Id.* at 27 (citing D.E. 28-1). Two weeks after filing the invoices with the Court, BHPH contacted Zoho Legal Team requesting it confirm the invoices are "true and accurate and have not been altered or changed since the time they were created." Fouzailoff Depo. at Exh. II, E-mail dated December 10, 2019. Fouzailoff attached a draft "Declaration of Representative of Zoho Corporation" for execution. *Id.* at Exh. JJ. Zoho Legal Team sent an email in response stating: "Unfortunately, we will not be able to sign the Affidavit as is for the following reasons. Zoho will not be able to authorize the authenticity of the data added in the invoices[.]" Fouzailoff Dep. Ex. II, Email dated Jan. 6, 2020.[1] Given this contention of fraudulent behavior, the Plaintiffs claim they are entitled to pursue their equitable claims. Plaintiffs have not provided support that this evidence would allow them to pursue multiple theories of recovery at trial, especially where Plaintiffs do not contest that there exists a valid contract. Accordingly, the Court grants summary judgment on Counts 2 and 3 for quantum meruit and unjust enrichment because there is an adequate remedy at law.

### 2. *Defendants' Counterclaim Count 2: Unjust Enrichment*

Defendants' counterclaim for unjust enrichment does not stem from the same subject matter as the parties' contractual relationship. The unjust enrichment claim stems from Plaintiffs' conduct after the contractual relationship ended when it requested the chargebacks from American Express. Defendants contend that Plaintiffs received chargebacks exceeding what they were owed and were thus, unjustly enriched.

---

[1] The Zoho email chain is the subject of a motion in limine, where Defendants argue that it is unfairly prejudicial under Federal Rule of Civil Procedure 403 to allow the Plaintiffs to argue that Zoho refused to certify the invoices because there was fraud. The Court denies the motion in limine with leave to reargue at trial.

Both sides have moved for summary judgment on this claim. Certainly, to the extent that BHPH is moving as a matter of law for the Court to find that Technolojoy was unjustly enriched, the motion is denied as there are material issues of fact as to whether Technolojoy received more in chargebacks than it was owed. The Court must then examine whether there is sufficient record evidence for BHPH to survive summary judgment on this counterclaim. Notably, this claim differs from Technolojoy's unjust enrichment claim as it does not arise out of the subject matter of the contract. Indeed, the Court granted summary judgment as to Defendants' contractual counterclaim finding that the chargebacks were not part of the subject matter of the parties' contract. The chargebacks were a remedy for Technolojoy to potentially mitigate its damages for goods paid for but not received.

To recover under an unjust enrichment theory, a plaintiff must demonstrate: "(1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009).

The record evidence undisputedly shows that Technolojoy received chargebacks totaling $260,000. There is an issue of material fact as to whether the amount received by Technolojoy exceeds what it was owed or whether it received cellular phones or other remuneration as consideration for its payments to BHPH. Accordingly, the Court denies Plaintiffs' motion for summary judgment as to BHPH's counterclaim for unjust enrichment.

*C. Amended Complaint Counts 4-6: Fraud Claims*

The individual Defendants, Fouzailoff and Slutskiy, move for summary judgment on the fraud claims. BHPH did not move for summary judgment. Counts 4 through 6 of the Amended Complaint are for fraudulent misrepresentation, fraudulent inducement, and fraud. Defendants

14

move for summary judgment under the independent tort doctrine. They argue summary judgment is due because the fraud claims are not independent of Plaintiffs' breach of contract claim and the record evidence does not show Plaintiffs suffered separate damages for the purported fraud.

"It is well settled in Florida that, where alleged misrepresentations relate to matters already covered in a written contract, such representations are not actionable in fraud." *Peebles v. Puig*, 223 So. 3d 1065, 1068 (Fla. 3d DCA 2017). "It is similarly well settled that, for an alleged misrepresentation regarding a contract to be actionable, the damages stemming from that misrepresentation must be independent, separate, and distinct from the damages sustained from the contract's breach." *Id.* Florida's independent tort doctrine "prohibits claims in tort for damages, which are the same as for breach of contract so as to prevent plaintiffs from recovering duplicative damages for the same wrongdoing." *Perez v. Scottsdale Ins. Co.*, No. 19-22761, 2019 WL 5457746, *3 (S.D. Fla. Oct. 24, 2019). The question is whether the allegations supporting the fraud counts are "inextricably intertwined with the alleged breach of contract." *Id.* (citing *Temurian v. Piccolo*, No. 18-cv-62737, 2019 WL 1763022 (S.D. Fla. April 22, 2019) (dismissing fraud claims inextricably intertwined with contract claim)).

The record evidence sufficiently creates an issue of material fact as to whether the invoicing system was transparent or whether it was intended to defraud Plaintiffs. There is record evidence that Defendants issued fraudulent invoices, cancelled refunds after saying they were being processed, and instructed Technolojoy to initiate chargebacks with American Express while discrediting the same requests. Algahim Affidavit at ¶¶ 18, 20, 21, 22, and 23. Certainly, there are issues of fact as to whether Plaintiffs were defrauded.

Plaintiffs must also establish damages separate and apart from damages stemming from breach of contract. Technolojoy seeks damages of $444,575 for damages stemming from the

breach of contract. Algahim also testified that as to the damages from fraud, Plaintiffs relied on

BHPH's misrepresentations about the credit card refunds in the amount of $74,060 and paid

BHPH $44,100 for inventory the same day. *Id.* at ¶ 21. Additionally, Algahim testified that the

fake credits and discounts induced Technolojoy to continue the business relationship. Finally,

Algahim testified that American Express ultimately denied $444,575 in chargebacks due to

fraud. *Id.* at ¶ 23. As a result of the conduct, Algahim testified that Technolojoy had insufficient

funds to buy cellular phones from other sources. *Id.* at ¶ 24. The Court finds there is an issue of

fact as to whether Plaintiffs were damaged by the purported fraud, separate and apart from the

breach of contract. Accordingly, the motion for summary judgment is denied as to the fraud

counts.

   D. *Plaintiffs' Amended Complaint Count 7 and Defendants' Counterclaim Count 4:*
      *Florida Deceptive and Unfair Trade Practices Act:*

   The parties are each suing each other under the Florida Deceptive and Unfair Trade

Practices Act. Plaintiffs allege that BHPH violated the Florida Deceptive and Unfair Trade

Practices Act by "requesting and accepting funds from Plaintiff under knowingly false pretenses;

fraudulently representing to Plaintiff the status of their orders and refunds; and providing

Plaintiff with fraudulent documentation and statements to induce Plaintiff to continue making

payments for merchandise that BHPH had no intention of delivering." Defendants move for

summary judgment stating that Plaintiffs cannot establish actual damages. Alternatively,

Defendants argue summary judgment is appropriate to the extent the Plaintiffs' claim is premised

on BHPH's failure to deliver conforming goods or refund instances it failed to deliver.

   Defendants' counterclaim under the Florida Deceptive and Unfair Trade Practices Act

alleges that Technolojoy violated the statute by "falsely claiming that BHPH did not ship and

deliver conforming products; falsely and fraudulently initiating chargebacks on all payments

made to BHPH; and making false and defamatory statements about BHPH and its principals and employees to third parties with whom BHPH had business relationships." Plaintiffs move for summary judgment on this counterclaim arguing there is no record evidence that they committed an unfair or deceptive practice that injured a consumer.

The Florida Deceptive and Unfair Trade Practices Act prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce. . .." § 501.204(1), Fla. Stat. A claim under the Act has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *See Virgilio v. Ryland Corp., Inc.*, 680 F.3d 1329, 1338 n. 25 (11th Cir. 2012); *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006); *Macias v. HBC of Fla., Inc.*, 694 So. 2d 88, 90 (Fla. 3d DCA 1997).

An unfair practice is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.'" *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489, 499 (Fla. 4th DCA 2001) (citation omitted). "[D]eception occurs if there is 'representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.'" *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003) (citation omitted). "While an entity need not be a consumer to bring a claim [under the Act], it still must prove the elements of the claim, including injury to the consumer." *Stewart Agency, Inc. v. Arrigo Enters., Inc.*, 266 So. 3d 207, 212 (Fla. 2019) (citing *PNR, Inc.*, 842 So. 2d at 777).

The Court will examine the Plaintiffs' claim under the Act and whether there is sufficient record evidence of damages. Algahim testified that:

- From March 2019 through July 2019, BHPH implemented a fraudulent scheme whereby it stated discounts on several invoices to induce Technolojoy to believe that BHPH was curing deficiencies resulting from prior non-conforming shipments of cell phones. However, Technolojoy was not getting any discount or credit as BHPH represented on its invoices. The alleged discounts were carried from one invoice to the other as BHPH never fully applied any of the credits/discounts. In other words, BHPH, Fouzailoff, and Slutskiy, all of whom prepared and submitted invoices at one point or another between March 2019 through July 2019, issued fake credits or discounts to Technolojoy.

- BHPH prepaid $1,292,046 to BHPH and received approximately $587,471 worth of cell phones, some of which were nonconforming. Techonolojoy successfully received $260,000 in chargebacks.  To date, Technolojoy has not fully recovered the funds it lost as a result of BHPH's breaches; Technolojoy is still owed $445,575.

Algahim Affidavit at ¶¶ 18, 28..

There is sufficient record evidence from which a reasonable jury could find Technolojoy was actually damaged by the Defendants' actions.  A reasonable jury could certainly find that BHPH's actions in carrying credits from invoice to invoice deceptively induced Technolojoy to believe that deficiencies from prior shipments were being cured.  There is sufficient evidence that Technolojoy suffered actual damages because it prepaid $1,292,046 and received goods valued at $587,471. To mitigate its damages of $704,575, Technolojoy instituted chargebacks and obtained $ 260,000. The difference would be Technolojoy's actual damages of $445,575. By the same token, there is also record evidence that the Google Sheet was sufficiently clear as to what was being provided and credited, and the invoice credits were not a deceptive practice intended to mislead Technolojoy. Accordingly, the Court denies summary judgment as to the Plaintiff's claim under the Florida Deceptive and Unfair Trade Practices Act claim because there is a disputed issue of material fact as to whether Defendants' actions were deceptive and whether the Plaintiffs suffered actual damages as a result.

Defendants' counterclaim under the Act, however, does not withstand summary judgment scrutiny. There is no record evidence that Technolojoy committed an unfair and deceptive

practice that injured a consumer.  First, Defendants argue that Technolojoy falsely claimed that BHPH did not deliver conforming phones. The uncontroverted record evidence belies this contention.  Undisputedly, BHPH sent nonconforming shipments of phones repeatedly. There can be no violation of the Act in this context.

Second, BHPH argues that Technolojoy violated the Act by initiating chargebacks on all invoices. The uncontroverted evidence shows that BHPH agreed that Technolojoy should initiate the chargebacks. Therefore, the Court cannot say that Technolojoy engaged in an unfair practice, when Defendants requested Plaintiffs engage in the very conduct, they now claim to be unfair.

Third, BHPH argues that Technolojoy violated the Act by making defamatory statements to third parties with whom BHPH had business relationships. This also does not constitute an unfair practice under the Act as the record evidence does not show that any comments made by Technolojoy caused actual damages as required by the Act.

The Court finds there is insufficient record evidence to support the Counterclaim under the Florida Deceptive and Unfair Trade Practices Act.  There is no evidence that a consumer was injured by Plaintiffs' conduct or that Plaintiffs' conduct caused Defendants actual damages.  Accordingly, the Court grants Plaintiffs' motion for summary judgment on the counterclaim for a violation of the Florida Deceptive and Unfair Trade Practices Act.

   *E.  Count 3 of Counterclaim: Defamation*

In Count 3 of the Counterclaim, BHPH alleges that Algahim and Technolojoy made defamatory statements. These include a statement that BHPH failed to ship products and that BHPH defrauded them. Counterclaim at ¶46. Plaintiffs move for summary judgment on this counterclaim arguing the defamation claim fails because it lacks specificity, the communications

do not meet the publication requirement, and some of the messages were made or published by a third party named David Becerra.

Defamation claims require specificity. "In a defamation case, a plaintiff must allege certain facts such as the identity of the speaker, a description of the statement, and provide a time frame within which the publication occurred." *Five for Ent. S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1328 (S.D. Fla. 2012) (dismissing the defamation claim for failure to plead when the allegedly defamatory statements were made and a sufficient description of those statements); *see Jackson v. N. Broward Cnty. Hosp. Dist.*, 766 So. 2d 256, 257 (Fla. 4th DCA 2000) (finding that the defamation count failed because it did not identify the persons to whom the allegedly defamatory comments were made and to link a particular remark to a particular defendant). A plaintiff "must set out the substance of each allegedly defamatory statement on which it is proceeding; the date, place, and manner of publication; to whom each statement was made; and facts showing the damages flowing from each statement." *Bezeau v. Cable Equip. Servs. Inc.*, No. 14-24538-CIV, 2015 WL 3540009, at *4 (S.D. Fla. May 27, 2015).

The elements of a defamation claim under Florida law are (1) publication; (2) falsity; (3) that the actor made the statements with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) that the statement is defamatory. *Id.* (citing *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008)). "A defamatory statement does not become actionable, however, until it is published or communicated to a third person; statements made to the person alleging the defamation do not qualify." *American Airlines v. Geddes*, 960 So. 2d 830, 833 (Fla. 3d DCA 2007).

Paragraph 46 of the Counterclaim states that Algahim made the defamatory statements to "PayPal, EMS, American Express, law enforcement officials and government, and others." BHPH fails to state the dates, the place of publication, the manner of publication, the identity of the individuals who read, heard or saw the alleged statements, and any facts showing the damages flowing from each statement set forth in paragraph 46 of the Counterclaim. The claim therefore lacks specificity.

Additionally, Exhibit W to Fouzailoff's deposition, does not show how Plaintiffs published the defamatory comments. The August 9, 2019 message Algahim sent on the Better Business Bureau's automated mailing system does not show how it was published to a third party. There is no record evidence that a third party accessed it. In fact, Slutskiy testified that he did not see any third parties comment on the thread. Slutskiy Depo. at 93-95. The July 11, 2019 email from Technolojoy to Slutskiy does not show that any third party was copied or blind-copied. The social media posting was by someone named David Becerra, and accordingly, Algahim and Technolojoy are not the publishers.

The only message that meets the publication requirement could be the text message exchange where Algahim wrote to David Becerra. The publication of a statement in a defamation claim only requires the dissemination of a false statement to a person other than the defamed person. *Klayman v. Jud. Watch, Inc.*, 22 F. Supp. 3d 1240, 1251 (S.D. Fla. 2014). Even if the publication requirement is met in this one instance, the Defendants did not show evidence of being damaged by the defamatory comments. Indeed, Slutskiy testified that BHPH's customer base increased after BHPH terminated its relationship with Technolojoy. Slutskiy Depo. at 110. Accordingly, Plaintiffs' motion for summary judgment is granted as to the defamation claim.

*F. Counterclaim Count 5: Common Law Indemnity*

BHPH seeks indemnity from Technolojoy for monies it paid EMS and Elavon stemming from chargebacks Technolojoy received.  A claim for common law indemnity "shifts the entire loss from one who, although without active negligence or fault, has been obligated to pay, because of some vicarious, constructive, derivative, or technical liability, to another who should bear the costs because it was the latter's wrongdoing for which the former is held liable." *Houdaille Indus. Inc. v. Edwards*, 374 So. 2d 490, 493 (Fla. 1979). The party seeking indemnity must allege three elements: "(1) that he is wholly without fault; (2) that the party from whom he is seeking indemnity is at fault; and (3) that he is liable to the injured party only because he is vicariously, constructively, derivatively, or technically liable for the wrongful acts of the party from whom he is seeking indemnity." *Fla. Farm Bureau Gen. Ins. Co. v. Ins. Co. of N. Am.*, 763 So. 2d 429, 435 (Fla. 5th DCA 2000).

The record evidence does not support this claim. First, the uncontroverted evidence shows that BHPH sent nonconforming shipments of cellular phones, and therefore is not "wholly without fault." Fouzailoff admitted the Google Sheet accurately listed the problems with the cell phones it shipped to Technolojoy. He also admitted to owing Technolojoy money before the relationship ended.  Second, the record evidence does not support that Technolojoy was "at fault" in seeking the chargebacks.  The record evidence is beyond dispute that BHPH instructed Technolojoy to institute the chargebacks to mitigate the monies owed by BHPH to Technolojoy. Third, BHPH cannot satisfy the third element of the claim for common law indemnity because it is directly liable to EMS and/or Elavon. EMS and Elavon process credit card payments for BHPH.  Technolojoy instituted chargebacks from American Express. There is no relationship where Technolojoy would be directly liable to EMS and/or Elavon, which would then make BHPH vicariously liable.  Rather, BHPH's liability to EMS and/or Elavon is direct because those

companies processed chargebacks stemming from BHPH's nonconforming shipments.

Accordingly, the Court grants Plaintiffs' motion for summary judgment as to the counterclaim

for common law indemnity.

       DONE AND ORDERED in Chambers at Miami, Florida, this _____ of March 2022.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record